# EXHIBIT "A"

Electronically FILED by Superior Court of California, County of Los Angeles on 11/18/2020 02:40 PM Sherri R. Carter, Executive Officer/Clerk of Court, by E. Johnston,Deputy Clerk
20TRCV00852

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**  General Reinsurance Corporation; and
*(AVISO AL DEMANDADO):* Does 1 to 20

**YOU ARE BEING SUED BY PLAINTIFF:** City of Redondo Beach
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

| FOR COURT USE ONLY |
| --- |
| *(SOLO PARA USO DE LA CORTE)* |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | CASE NUMBER: |
| --- | --- |
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of California, County of Los Angeles<br>825 Maple Avenue<br>Torrance, California  90503 | *(Número del Caso):*<br>20TRCV00852 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: Richard M. Stoll
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Law Offices of S. Henslee Smith
1578 North Batavia Street, Orange, California 92867                    (714)730-0220

| DATE: Sherri R. Carter Executive Officer / Clerk of Court | Clerk, by | E. Johnston | , Deputy |
| --- | --- | --- | --- |
| *(Fecha)* 11/18/2020 | *(Secretario)* | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov<br>Westlaw Doc & Form Builder™ |
| --- | --- | --- |

Electronically FILED by Superior Court of California, County of Los Angeles on 11/18/2020 02:40 PM Sherri R. Carter, Executive Officer/Clerk of Court, by E. Johnston,Deputy Clerk
20TRCV00852

Assigned for all purposes to: Torrance Courthouse, Judicial Officer: Deirdre Hill

**Law Offices of S. Henslee Smith**
Richard M. Stoll (SBN 110020)
1578 North Batavia Street
Orange, California 92867
Tel:    (714) 730-0220
Fax:    (714) 832-6009

Attorneys for: Plaintiffs, City of Redondo Beach
File No:      388M

**Superior Court of the State of California**

**County of Los Angeles, Southwest District, Torrance Courthouse**

| | |
|---|---|
| City of Redondo Beach, | **Case No. TBD** |
| Plaintiff, | 20TRCV00852 |
| | Judge: TBD |
| vs. | Location: TBD |
| | Unlimited Jurisdiction |
| General Reinsurance Corporation; and Does 1 to 20, | **Complaint for Damages** |
| Defendants. | **NO FILING FEE PER GOVERNMENT CODE, SECTION 6103** |

Plaintiff, City of Redondo Beach, alleges:

### General Allegations

1.    Plaintiff, City of Redondo Beach, is and at all relevant times was, a public entity and an incorporated City duly organized, existing and operating under all applicable provisions of California law.

2.    Plaintiff is informed and believes and based thereon alleges that Defendant, General Reinsurance Corporation, is and at all times mentioned herein was an insurance company authorized to transact business in the State of California.

3.    The true names and capacities of Defendants, Does 1 to 20, are unknown and Plaintiffs will amend this Complaint when they are ascertained.

4.  The Defendants, and each of them, were the agents and employees of each other and in doing the acts alleged, were acting within the course and scope of that agency and employment.

5.  This Court is the proper court because the damage to Plaintiff, City of Redondo Beach, occurred in its jurisdictional area.

6.  From on or about July 1, 1990 through July 1, 1993 Defendant, General Reinsurance Corporation, issued and delivered an Excess Insurance Policy for Self-Insurer of Workers Compensation and Employers Liability, Policy Number X-12162 on which the City of Redondo Beach was a named insured and thereafter the City of Redondo Beach was added as insured to Policy Number XD-083 issued to the Independent Cities Risk Management Authority effective up to and including July 1, 2001. Pursuant to said polices Plaintiff's self-insured retention was $500,000.00.  A true and contract copy of pertinent portions of the excess insurance policy contract is attached hereto as **Exhibit 1**.

7.  Defendant agreed to indemnify Plaintiff, City of Redondo Beach, for loss as a qualified self-insurer under the Workers Compensation Law in excess of Plaintiff's self-insured retention for each accident or each employee for disease.  Pursuant to said Excess Insurance Policy, the retention applied separately to any one employee for bodily injury by disease.

8.  The **Exhibit 1** excess insurance policy contract provided pursuant to "Part One – Workers Compensation Insurance" at page 2 that Defendant, General Reinsurance Corporation, would indemnify Plaintiff for loss as a qualified self-insurer under the Workers Compensation Law in excess of Plaintiff's retention regarding bodily injury by disease, provided: "[T]he bodily injury by disease is caused or aggravated by the conditions of employment by the Insured.  The employee's last day of last exposure to

2

those conditions of that employment causing or aggravating such bodily injury by disease must occur during the period this policy is in force."

9.    The **Exhibit 1** excess insurance policy contract further provided pursuant to "Part Five – Claim Expenses" at page 5 that Defendant, General Reinsurance Corporation, would also indemnify Plaintiff for a portion of the claim expenses incurred, including but not limited to litigation costs, its claim investigation and legal expenses directly allocated to the specific claim.

10.   Plaintiff's employee, Trudy Johns, was employed by Plaintiff, City of Redondo Beach, as a police service specialist with its Police Department from October 12, 1978 through January 2, 1997 during which time her conditions of employment caused bodily injury by disease to her upper extremities and psyche.  As a result of said bodily injury by disease, Trudy Johns filed a workers compensation claim resulting in a single Workers Compensation Appeals Board action, Case Number MON 202-714, which was tried before the Workers Compensation Appeals Board and determined that she sustained a cumulative trauma to both wrists and psyche with resultant fibromyalgia arising out of the course of her employment through January 2, 1997. As a result of said claim and Workers Compensation Appeals Board action, Plaintiff was required to pay workers compensation benefits up to and including today's date and will be required to continue to pay benefits in excess of its self-insured retention of $500,000.00 under the terms of the **Exhibit 1** Excess Insurance Policy.

11.   Plaintiff, City of Redondo Beach, pursuant to the terms of the **Exhibit 1** Excess Insurance Policy, gave prompt notice of Trudy Johns' claim to Defendants, and each of them, and provided complete details of the injuries of Trudy Johns, her workers compensation claim and resulting Workers

Complaint for Damages

Compensation Appeals Board action since said claim appeared to involve indemnity by said Defendants.

12.   Following receipt of Plaintiff's notice of Trudy Johns' claim, Plaintiff is informed and believes and based thereon alleges that Defendants, and each of them, conducted a full and complete investigation of the claim and once Trudy John's claim reached Plaintiff's self-insured retention of $500,000.00, Defendants, and each of them, indemnified Plaintiff $56,566.15 on December 22, 2014 pursuant to the terms of the **Exhibit 1** Excess Insurance Policy.

13.   Defendants, and each of them, however, have refused to pay any further amounts pursuant to the terms of the **Exhibit 1** Excess Insurance Policy. As of July 10, 2020, the workers compensation benefits paid by Plaintiff pursuant to Trudy John's Workers Compensation Appeals Board action, Case Number MON 202-714 amounted to $668,179.25 in workers compensation benefits and claim expenses totaling $19,773.20, which is in excess of Plaintiff's self-insured retention.   At no time prior to the last payment on December 22, 2014 did Defendants, and each of them, advise Plaintiff that additional documentation or information was needed nor did said Defendants explain why no further indemnity payments were being paid pursuant to the terms of the **Exhibit 1** Excess Insurance Policy.

14.   On January 6, 2017, Defendants, and each of them, notified Plaintiff, City of Redondo Beach, in writing that it was contending there were multiple distinct injuries stemming from multiple causes, even though there was only one cumulative trauma claim resulting from the conditions of Trudy John's employment causing bodily injury by disease to her upper extremities and psyche.   As a result of said contentions, Defendants, and each of them, have refused to pay and have continued to refuse pay any further sums

Complaint for Damages

pursuant to the provisions of the **Exhibit 1** excess insurance policy contract.

15.    Plaintiff, City of Redondo Beach, has complied with and fully performed its obligations and duties called for and specified in the **Exhibit 1** Excess Insurance Policy by providing prompt notice of Trudy Johns' claim for bodily injury by disease, continuous reports of Ms. Johns' claim, the amount of benefits and claim expenses paid, copies of her medical records and excess loss indemnification requests up to and including August 28, 2016; and paying its share of the premiums for the policy issued to it and as a member of the Independent Cities Risk Management Authority.

16.    Plaintiff, City of Redondo Beach, and Defendants, and each of them, entered into a Tolling Agreement on December 28, 2018 and an Amendment of Tolling Agreement on November 26, 2019 whereby said parties agreed to toll the running of the statute of limitations up to and including November 30, 2020.   True and correct copies of the Tolling Agreement and Amendment of Tolling Agreement are attached hereto as **Exhibit 2**.

## **First Cause of Action**

### **(Breach of Contract)**

17.    Plaintiff hereby repleads, realleges and incorporates by reference paragraphs 1 to 16 as though fully set forth.

18.    Defendants, and each of them, have breached the **Exhibit 1** Excess Insurance Policy as follows:

(a)    By refusing to indemnify Plaintiff City of Redondo Beach pursuant to the terms of the **Exhibit 1** Excess Insurance Policy for workers compensation benefits paid to Trudy Johns for bodily injury by disease

caused or aggravated by the conditions of employment that occurred during the period this Excess Insurance Policy was in force.

(b)     By refusing to continue its obligation and duty to indemnify Plaintiff when after conducting an investigation determined Plaintiff was owed indemnity under the policy and after paying a portion of the sums owed Plaintiff pursuant to the terms of the **Exhibit 1** Excess Insurance Policy.

(c)     By denying Plaintiff indemnity under the **Exhibit 1** Excess Insurance Policy on the grounds that Plaintiff's employee, Trudy Johns, suffered multiple distinct injuries stemming from multiple causes, when in truth and in fact there was only one cumulative trauma claim resulting from the conditions of Trudy Johns' employment causing bodily injury by disease to multiple body parts that was supported and evidenced by the medical reports provided by Plaintiff.

(d)     By refusing to reimburse Plaintiff pursuant to the terms of the **Exhibit 1** Excess Insurance Policy its Claim Expenses incurred regarding Trudy Johns' workers compensation claim and resulting Workers Compensation Appeals Board action.

19.     As a direct and proximate result of the breach by Defendants, and each of them, Plaintiff has been damaged in that it has been denied indemnity pursuant to the terms of the **Exhibit 1** Excess Insurance Policy in the amount of workers compensation benefits paid and to be paid in the future to Plaintiff's employee Trudy Johns in excess of Plaintiff's $500,000.00 self-insured retention, less the sums previously paid by Defendants, and each of them, in a sum according to proof.

//

//

//

//

Complaint for Damages

## Second Cause of Action

### (Breach of the Covenant of Good Faith and Fair Dealing)

20.  Plaintiff hereby repleads, realleges and incorporates by reference paragraphs 1 to 16 and 18 to 19 as though fully set forth.

21.  Plaintiff alleges that Defendants, and each of them, breached the implied covenant of good faith and fair dealing arising out of the **Exhibit 1** Excess Insurance Policy, in the following respects:

(a)   By unreasonably and without proper cause refusing and continuing to refuse to make indemnity payments owed to Plaintiff, City of Redondo Beach, under the terms of the **Exhibit 1** Excess Insurance Policy when Defendants, and each of them, had initially investigated Trudy Johns' workers compensation claim and resulting Workers Compensation Appeals Board action, determined indemnity was owed to Plaintiff and paid a portion of the indemnity owed to Plaintiff but then refused to continue to make payments.

(b)   By unreasonably and without proper cause asserting that Trudy Johns suffered multiple distinct injuries stemming from multiple causes as a pretext to deny coverage and further indemnity payments, when in truth and in fact the reports of the doctors that evaluated Trudy Johns supplied to Defendants, and each of them supported that there was only one cumulative trauma claim resulting from the conditions of Trudy Johns' employment causing bodily injury by disease to her upper extremities and said doctors did not attribute her injuries to any other causes or injures.

(c)   By unreasonably and without proper cause engaging in a course of conduct to deny coverage to other insureds under the **Exhibit 1** Excess Insurance Policy, including Plaintiff, City of Redondo Beach, for valid claims on the same grounds asserted by Defendants, and each of them, that Plaintiff's and other insureds' claims arose out of multiple distinct injuries

7

Complaint for Damages

stemming from multiple causes as a pretext to deny coverage for valid claims asserted pursuant to the policy.

(d)    By unreasonably and without proper cause misapplying and misinterpreting case law, <u>Supervalu v Wexford</u> (2009) 175 Cal.App.4th 64, which involved one specific injury and two cumulative trauma claims and multiple workers compensation claims brought by an employee the insured alleged was one occurrence thereby triggering excess coverage, as a pretext to deny Plaintiff indemnity for Trudy Johns' one claim for one continuous trauma to her upper extremities and psyche.

(e)    By unreasonably and without proper cause continuing to deny coverage and payment under the policy even though the matter was tried before the Workers Compensation Appeals Board which determined there was one cumulative trauma claim resulting in injuries to her upper extremities and psyche and a permanent disability rating of 100% thereby requiring Plaintiff to pay workers compensation benefits exceeding Plaintiff's self-insured retention thereby triggering coverage under the **Exhibit 1** Excess Insurance Policy.

(f)    By unreasonably and without proper cause denying coverage to Plaintiff and other insureds under the **Exhibit 1** Excess Insurance Policy because Defendants, and each of them, are no longer receiving premiums for said policy and no longer insure Plaintiff and the other insureds regardless that their duty and obligation to provide excess coverage under the policy continues and they are denying coverage as a pretext to stop paying valid claims pursuant to the terms of the **Exhibit 1** Excess Insurance Policy.

(g)    By unreasonably and without proper cause refusing to reimburse Plaintiff pursuant to the terms of the **Exhibit 1** Excess Insurance Policy its

Claim Expenses incurred regarding Trudy Johns' workers compensation claim and resulting Workers Compensation Appeals Board action.

22. The denial of payment of indemnity pursuant to the terms of the **Exhibit 1** Excess Insurance Policy was done by Defendants, and each of them, without reasonable cause. Defendants, and each of them, knew that they had a duty and obligation to indemnify Plaintiff and initially honored their duty and obligation but have since ceased to do so. As a direct and proximate result of the unreasonable conduct of Defendants, and each of them, Plaintiff, City of Redondo Beach, has been required to retain attorneys to obtain benefits due to them under the policy.

23. As a direct result of the tortious conduct of Defendants, and each of them, Plaintiff, City of Redondo Beach, was damaged and is entitled to recover reasonable attorney fees and the sums due to it under the terms of the **Exhibit 1** Excess Insurance Policy.

24. The refusal of Defendants, and each of them to carry out their duties and obligations under the **Exhibit 1** Excess Insurance Policy to indemnify Plaintiff was done in conscious disregard of the rights of Plaintiff to receive indemnity due to it under the terms of the Policy. These acts were done with the knowledge, approval and ratification of the Defendants, and each of them. These acts continued regardless of Defendants clear obligation and duty under the terms of the contract to indemnify Plaintiff and Plaintiff is therefore entitled to recover punitive damages.

//
//
//
//
//
//

9

Complaint for Damages

**Wherefore, Plaintiff prays**:

1.     For damages according to proof for breach of contract.

2.     For attorney fees incurred in obtaining policy benefits as provided by law.

3.     For punitive damages in an amount sufficient to deter and make an example of Defendants.

4.     For costs of suit.

5.     For pre-judgment interest as may be provided by law.

4.     For such other and further relief as this Court may deem appropriate.

Dated: November 18, 2020           Law Offices of S. Henslee Smith

By:     _____

Richard M. Stoll, Attorneys for
Plaintiff, City of Redondo Beach

Complaint for Damages

**GENERAL REINSURANCE CORPORATION**
Financial Centre
P.O. Box 10350
Stamford, Connecticut 06904-2350

Excess Insurance Policy
For Self-Insurer Of
Workers Compensation and Employers Liability

In return for the payment of the premium and subject to all the terms of this policy, the Insurer agrees with the Insured named in Item 1 of the Information Page as follows:

## GENERAL SECTION

A. **THE POLICY**

This policy includes the Information Page. It is a contract of insurance between the Insured and the Insurer. The only agreements relating to this insurance are stated in this policy. The terms of this policy may not be changed or waived except by an endorsement made a part of this policy.

B. **CONTINUOUS POLICY**

This policy is effective at 12:01 a.m. on the effective date stated in Item 3 of the Information Page and will remain in full force and effect until cancelled as provided in Part Seven – Conditions, Paragraph L of this policy. All of the provisions of this policy apply separately to each consecutive 12-month period beginning with the date shown in Item 3 of the Information Page in the same manner as if a separate policy had been written for each such consecutive period.

C. **WHO IS INSURED**

The Insured is named in Item 1 of the Information Page. If the Insured is a partnership or joint venture, each partner or member of the joint venture is insured only in the capacity as employer of employees of the partnership or joint venture.

D. **WORKERS COMPENSATION LAW**

Workers Compensation Law means the workers or workmens compensation law and occupational disease law of each state named in Item 5a of the Information Page. It includes any amendments to that law which are in effect during the term of this policy. It does not include provisions of any law that provides non-occupational disability benefits.

E. **QUALIFIED SELF-INSURER**

The Insured represents that it is a duly qualified self-insurer under the Workers Compensation Law of each state named in Item 5a of the Information Page and will continue to maintain such qualifications during the term this policy is in effect. If the Insured should terminate such qualifications or if qualification of the Insured as a self-insurer is cancelled or revoked while this policy is in force, the amounts payable under this policy will not exceed the amounts which would have been payable if such qualifications had been maintained in full force and effect.

F. **STATE**

State means any state of the United States of America and the District of Columbia.

EXHIBIT 1

## PART ONE – WORKERS COMPENSATION INSURANCE

A.   The Insurer will indemnify the Insured for loss as a qualified self-insurer under the Workers Compensation Law in excess of the Insured's retention stated in Item 6 on the Information Page but not for more than the limit of indemnity stated in Item 7 of the Information Page.

B.   Loss means amounts actually paid by the Insured as a self-insurer under the Workers Compensation Law.

C.   This insurance applies to losses paid by the Insured as a qualified self-insurer under the Workers Compensation Law for bodily injury by accident or bodily injury by disease including resulting death, provided:

   1.   the bodily injury by accident occurs during the period this policy is in force; or

   2.   the bodily injury by disease is caused or aggravated by the conditions of employment by the Insured.  The employee's last day of last exposure to those conditions of that employment causing or aggravating such bodily injury by disease must occur during the period this policy is in force.

D.   The Insurer will not indemnify the Insured for any payments made by the Insured in excess of benefits regularly required by the Workers Compensation Law if such excess payments are required because:

   1.   of serious and wilful misconduct of the Insured;

   2.   the Insured employed an employee in violation of law;

   3.   the Insured failed to comply with a health or safety law or regulation;

   4.   In violation of the Workers Compensation Law, the Insured discharged, coerced, or otherwise discriminated against any employee; or

   5.   the Insured violated or failed to comply with any Workers Compensation Law.

E.   The Insurer will not indemnify the Insured for any loss arising out of operations for which the Insured has rejected any Workers Compensation Law.

## PART TWO – EMPLOYERS LIABILITY INSURANCE

A.   The Insurer will indemnify the Insured as a qualified self-insurer of employers liability for loss in excess of the Insured's retention stated in Item 6 on the Information Page but not for more than the limits of indemnity stated in Item 7 of the Information Page.

B.   Indemnity by the Insurer will be made only if the original suit and any related legal actions for damages for bodily injury by accident or disease was brought in the United States of America, its territories or possessions or Canada.

C.   Loss means amounts which the Insured legally paid as damages because of bodily injury by accident or bodily injury by disease.  Bodily injury includes resulting death.

D.   This insurance applies to losses paid by the Insured as a qualified self-insurer of employers liability for bodily injury which arises out of and in the course of the injured employee's employment by the Insured, provided:

   1.   the bodily injury by accident occurs during the period this policy is in force;

   2.   the bodily injury by disease is caused or aggravated by the conditions of employment by the Insured.  The employee's last day of last exposure to those conditions of that employment causing or aggravating such bodily injury by disease must occur during the period this policy is in force; and

   the employment is necessary or incidental to work conducted by the Insured in a state listed in Item 5a of the Information Page.

E.   **DAMAGES INCLUDE:**

   1.   damages for which the Insured is liable to a third party by reason of a claim, suit or proceeding against the Insured to recover damages obtained by an injured employee of the Insured from the third party;

   2.   damages for care and loss of services of an injured employee of the Insured;

   3.   damages for consequential bodily injury to a spouse, child, parent, brother, or sister of the injured employee of the Insured; and

   provided such damages in 1, 2, and 3 above are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by the Insured; and

   4.   damages because of bodily injury to an employee of the Insured arising out of and in the course of employment, claimed against the Insured in a capacity other than as employer.

F.   **EMPLOYERS LIABILITY INSURANCE EXCLUDES:**

   1.   liability assumed under a contract;

   2.   punitive or exemplary damages;

   3.   bodily injury to an employee while employed in violation of law;

   4.   bodily injury intentionally caused or aggravated by or at the direction of the Insured;

5.  bodily injury occurring outside the United States of America, its territories or possessions, or Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America or Canada who is temporarily working outside these countries for the Insured;

6.  damages arising out of the Insured's violation of law in the discharge of, coercion of, or discrimination against any employee;

7.  any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law; or

8.  damages arising out of operations for which the Insured:

    (a)  has violated or failed to comply with any workers compensation law, or

    (b)  has rejected any workers compensation law.

## PART THREE – OTHER STATES INSURANCE

A.  This policy applies in other states not shown in Item 5a of the Information Page if an employee of the Insured is injured in such a state and if the work of such injured employee of the Insured was within the scope of such employee's employment, at the direction of the Insured, and was temporary and transitory in such other state provided the Insured is not insured or self-insured in such other state, and

    1.  such other state is not listed as an exception in Item 5c of the Information Page;

    2.  such injured employee was regularly employed in a state listed in Item 5a of the Information Page;

    3.  the work in the other state was incidental to work in a state shown in Item 5a of the Information Page; and

    4.  the work of such injured employee was not at a permanent or fixed location of the Insured subject to the Workers Compensation law in such other state.

B.  For any workers compensation benefits awarded under the law of any other state except those listed in Item 5c of the Information Page, the Insurer will indemnify the Insured only to the extent that the other state benefits do not exceed benefits which would have been paid to such injured employee under the workers compensation law of the state in which such employee is regularly employed.

C.  For any workers compensation benefits awarded under the U.S. Longshoremen's and Harbor Workers' Compensation Act, except if such Act is listed in Item 5c of the Information Page, the Insurer will indemnify the Insured only to the extent that those benefits do not exceed benefits which would have been paid to such injured employee under the workers compensation law of the state in which such employee is regularly employed.

## PART FOUR - INSURED'S RETENTION AND INSURER'S LIMIT OF INDEMNITY

A.   **Retention by Insured:**

The Insured shall pay for its own account without other insurance, all loss up to the amount stated in Item 6 of the Information Page as Insured's Retention.

B.   **Limit of Indemnity by Insurer:**

The Insurer will indemnify the Insured for loss over the amount stated as Insured's Retention in Item 6 of the Information Page. The limit of indemnity for Workers Compensation Insurance will not exceed the limit stated in Item 7a of the Information Page. The limit of indemnity for Employers Liability Insurance will not exceed the limit stated in Item 7b of the Information Page. The total indemnity for Workers Compensation and Employers Liability Insurance combined will not exceed in any event the limit stated in Item 7c of the Information Page.

C.   **How Retention and Limit of Indemnity Apply:**

The Insured's Retention and Insurer's Limit of Indemnity stated on the Information Page apply to losses paid by the Insured as a qualified self-insurer of Workers Compensation and Employers Liability as follows:

1.   To one or more employees because of bodily injury or death in any one accident.

2.   To any one employee for bodily injury or death by disease.

The inclusion of more than one legal entity as Insured in Item 1 of the Information Page will not increase the Insured's Retention nor the Insurer's Limit of Indemnity.

D.   **Accident:**

1.   Accident means each accident or occurrence or series of accidents or occurrences arising out of any one event.

2.   An accident is deemed to end 72 hours after the event commences. Each subsequent 72 hours is deemed to be a separate accident period.

E.   **Disease:**

Disease is an accident only if it results directly from bodily injury by accident.

## PART FIVE - CLAIM EXPENSES

A.   Claim expenses of the Insured mean its litigation costs, interest as required by law on awards or judgments, and its claim investigation or legal expenses which can be directly allocated to a specific claim. Claim expenses exclude: salaries and travel expenses of employees of the Insured, annual retainers, overhead and any fees it paid for claim administration.

B.  The Insurer will indemnify the Insured for a portion of the claim expenses incurred by the Insured.  The amount of the indemnity will be the percentage of the Insured's claim expenses determined by the ratio that the amount of loss paid by the Insurer bears to the total amount of the loss.  Such payments to indemnify the Insured for claim expenses are in addition to the Insurer's limit of indemnity.

C.  The Insurer has no duty to investigate, handle, settle or defend any claim, proceeding or suit against the Insured.

## PART SIX – PREMIUM

A.  <u>Premium Determination:</u>

Premium will be determined on the basis of the entire payroll and other remuneration paid or payable to all employees and officers of the Insured.

Remuneration includes 1 and 2 below:

1.  Payroll, salaries, commissions, bonuses, overtime pay, pay for holidays, vacations, pay for piece work, payments under profit sharing or incentive plans, the value of lodging, apartments, and meals received by employees as part of their pay, and the value of store certificates, merchandise, credits, or any other substitute for money received by employees as part of their pay.

2.  The entire amount received by any other person engaged in work which could make the Insured liable under Part One – Workers Compensation of this policy.  This section 2 will not apply if the Insured gives proof to the Insurer that the employers of these persons lawfully secured their workers compensation obligations.

B.  <u>Estimated Premium:</u>

The estimated premium shown on the Information Page is an estimate and is subject to verification by inspection or audit.

C.  <u>Advance Premium:</u>

The advance premium stated in Item 8 of the Information Page is a deposit premium payable at the inception of this policy and will be retained by the Insurer until the end of each interim policy adjustment period.

D.  <u>Earned Premium:</u>

The earned premium will be determined at the end of each interim policy adjustment period by use of actual, instead of estimated, premium base.  The Insured will promptly pay such earned premium to the Insurer.  If the earned premium exceeds premium previously paid, the Insured will promptly pay such excess to the Insurer.  If such earned premium is less than premium previously paid, the Insurer will promptly return the balance to the Insured.  The earned premium for each 12-month term of this policy will not be less than the Minimum Annual Premium stated in Item 8 of the Information Page.

-6-

E.   Termination of Policy:

The termination date of this policy will be deemed the end of the final interim policy adjustment period. If the earned premium upon termination of this policy exceeds premium previously paid, the Insured will pay such excess to the Insurer. If such earned premium is less than premium previously paid, the Insurer will return the balance to the Insured.

## PART SEVEN - CONDITIONS

A.   Notice of Accident:

1.   The Insured shall give prompt written notice to the Insurer if a claim for an injury or disease occurs which appears to involve indemnity by the Insurer.

2.   The Insured shall also give prompt written notice to the Insurer if an injury of the following type occurs:

(a)   a fatality;

(b)   an amputation of a major extremity;

(c)   any serious head injury (including skull fracture or loss of sight of either or both eyes);

(d)   any injury to the spinal cord;

(e)   any disability where it appears reasonably likely that there will be disability of more than one year; or

(f)   any second or third degree burn of 25% or more of the body.

3.   Notice of accident given to the Insurer shall contain complete details on the injury, disease, or death. If a suit, claim or other proceeding is commenced because of an injury listed in above section 2 or on any injury which appears to involve indemnity by the Insurer, the Insured shall give the Insurer:

(a)   all notices and legal papers related to the claim, proceeding or suit, or copies of these notices and legal papers; and

(b)   copies of reports on investigations made by the Insured on such claims, proceedings, or suits.

B.   Duties of Insured and Insurer:

1.   The Insurer has no duty to investigate, handle, settle or defend any claims, suits, or proceedings against the Insured.

    2.    The Insurer has the right and shall be given the opportunity by the Insured to associate with the Insured in the defense, investigation, or settlement of any claim, suit or proceeding which appears to involve indemnity by the Insurer. In such association, the Insured and Insurer shall cooperate in all aspects of defense, investigation, or settlement.

C.    <u>Appeals</u>:

If the Insured does not appeal an award or judgment which exceeds the Insured's Retention, the Insurer has the right to take an appeal at its own cost and expense and shall be liable for costs, disbursements and interest related to the appeal. If the Insurer elects to appeal, the liability of the Insurer on such an award or judgment shall not exceed the limit of indemnity in Item 7 of the Information Page plus the cost and expense of such appeal.

D.    <u>Payment of Loss to Insured</u>:

The Insurer will indemnify the Insured for any loss under this policy as follows:

    1.    For Part One - Workers Compensation Insurance and Part Three - Other States Insurance - the Insured will pay all benefits required of the Insured by the Workers Compensation Law. The indemnity by the Insurer will be made at monthly intervals after the Insurer has received proofs of payments by the Insured. Workers Compensation awards shall not be settled on a lump sum basis without written consent of the Insurer.

    2.    For Part Two - Employers Liability Insurance - if damages are awarded which the Insured legally must pay, the Insured shall pay such damages. The indemnity will be made within 30 days after the Insurer has received proof of payment by the Insured.

E.    <u>Subrogation - Recovery From Others</u>:

    1.    The Insurer has the right to recover all payments which the Insurer has made to the Insured from anyone liable for such loss. If the Insured recovers from anyone liable for such loss, the Insurer shall first be reimbursed from such recovery to the extent of its payments to the Insured.

    2.    If the Insured does not commence an action or proceeding to recover damages from anyone liable for a loss paid by the Insurer, the Insurer has the rights of the Insured to recover damages from anyone liable for such loss. The Insured will do everything necessary to protect those rights and help the Insurer to enforce them. Any such recovery by the Insurer will be allocated as follows:

        (a)    the Insurer will be reimbursed for all of its payments under this policy;

        (b)    any balance of the recovery which remains after the Insurer has been reimbursed will be paid to the Insured.

3.  Expenses of all proceedings to recover from anyone liable for injury covered by this policy will be allocated between the Insured and Insurer in the ratio represented by the allocation of any damages which have been recovered.

4.  If such an action or proceeding undertaken solely by the Insurer results in no recovery, all related expenses will be paid by the Insurer.

5.  If there is insurance coverage in excess of the Insurer's limit of indemnity under this policy and if subrogation recovery is obtained from anyone liable for loss, any such excess carrier will be reimbursed for any loss paid in excess of the Insurer's limit of indemnity before any reimbursement of the Insurer and Insured under the provisions of this Section E.

6.  If there is no insurance coverage in excess of the Insurer's limit of indemnity and if there is a subrogation recovery in excess of the Insurer's limit of indemnity, the Insured will be reimbursed to the extent of any loss paid by the Insured in excess of the Insurer's limit of indemnity, before the Insurer is reimbursed under the provisions of this Section E.

F.  <u>Actions Against Insurer</u>:

There will be no right of action against the Insurer unless the Insured has complied with all the terms of this policy.

G.  <u>Other Insurance</u>:

If the Insured has other insurance, reinsurance, indemnity, or reimbursement agreement applicable to a loss for which the Insured would be indemnified under this policy, the indemnity under this policy will apply in excess of such other insurance, reinsurance, indemnity or reimbursement and will not contribute to such a loss with such other insurance, reinsurance, indemnity or reimbursement. This condition does not apply to other insurance, reinsurance, indemnity or reimbursement which the Insured has procured to apply in excess of the sum of the Insured's retention and the Insurer's limit of indemnity under this policy.

H.  <u>Inspection</u>:

The Insurer has the right at any time, but is not obliged to inspect the Insured's operations and workplaces. Such inspections are not safety inspections. They relate only to the insurability of the workplaces and the premiums to be charged. The Insurer may give reports to the Insured on the conditions found upon inspection. The Insurer does not undertake to perform the duty of any person to provide for the health or safety of the Insured's employees or the public. The Insurer does not warrant that the Insured's workplaces are safe or healthful or that they comply with laws, regulations, codes, or standards.

I. **Audit:**

The Insured will keep records needed to compute the premium in accordance with Part Six - Premium and send copies of those records when the Insurer asks for such records. The Insured will also send them to the Insurer at the end of each interim policy adjustment period and upon termination of this policy. The Insurer has the right to examine and audit all records of the Insured which relate to this policy, including ledgers, journals, registers, vouchers, contracts, tax reports, disbursement records and programs for storing and retrieving data. Information developed by audit will be used to determine earned and final premium. The Insurer has the right to conduct audits during regular business hours while this policy is in force and within three years after the final settlement of all claims or payments made on account of bodily injury to employees throughout the term of this policy.

J. **Assignment:**

An assignment of interest under this policy will not bind the Insurer unless an endorsement assigning interest under this policy is issued by the Insurer to be part of this policy.

K. **Bankruptcy or Insolvency of Insured:**

Bankruptcy or insolvency of the Insured will not relieve the Insurer of its duties and liabilities under this policy. After the Insured's retention has been reached, payments due under this policy will be made by the Insurer as if the Insured had not become bankrupt or insolvent, but not in excess of the Insurer's limit of indemnity. Such payments will be made to the Trustee in Bankruptcy or as a Court of competent jurisdiction may ultimately direct.

L. **Cancellation:**

The Insurer or Insured may cancel this policy at any time by advance written notice stating when the cancellation is to take effect. Such cancellation notice shall be not less than the number of days shown in Item 4 of the Information Page. If the Insurer cancels because of non-payment of premium by the Insured, the Insurer has the right to cancel this policy on ten days written notice to the Insured. Mailing notice of cancellation by registered or certified mail or delivery of such notice by personal service at the address shown in Item 2 of the Information Page will be sufficient to prove notice. If the Insured cancels this policy on a date other than at the end of any 12-month period following the effective date of this policy, the Insurer will determine earned premium in accordance with the short rate table in use by the Insurer. The Insured shall pay the earned premium determined for the cancelled policy. Any premium due the Insured will be returned promptly by the Insurer. Actual return of premium due the Insured is not a condition to the effectiveness of cancellation of this policy as provided in this Condition.

M. **Sole Representative:**

If more than one Insured is named in Item 1 of this policy, the Insured first named in Item 1 of the Information Page will act on behalf of all Insureds to give or receive notice of cancellation, receive return premium or indemnity, or request change in this policy.

N.   Policy Conforms To Law:

If terms of this policy are in conflict with any law applicable to this policy, this statement amends this policy to conform to such law.

O.   Captions:

The headings or captions used in this policy are for the purpose of reference only and shall not otherwise affect the meaning of this policy.

IN WITNESS WHEREOF, the Insurer has caused this policy to be signed by its President and Secretary in Stamford, Connecticut, but this policy shall not be binding on the Insurer unless countersigned by another officer or attorney-in-fact of the Insurer.

Secretary                                                President

-11-

SI-EP-01 (6/84 Rev. 2/85)

# TOLLING AGREEMENT

This Tolling Agreement ("Agreement") is made as of the Effective Date, defined below, between the City of Redondo Beach ("Redondo Beach") and General Reinsurance Corporation ("GRC") (the "Parties").

## Definitions and Recitals

1.      As used in this Agreement, "Effective Date" will be November 30, 2018.

2.      As used in this Agreement, "Policies" means the Excess Insurance Policy for Self-Insurer of Workers Compensation and Employers Liability, No. X-12162, effective July 1, 1990 to July 1,1993 and the Excess Insurance Policy for Self-Insurer of Workers Compensation and Employers Liability, No. XD-083, effective July 23, 1993 to July 1, 2001, issued by GRC to the Independent Cities Risk Management Authority, of which Redondo Beach is a Member City.

3.      As used in this Agreement, "Johns Workers' Compensation Claims" means any workers' compensation claims and related injuries asserted by Trudy Johns against Redondo Beach, including but not limited to her claims and injuries for these issues: (1) right sided carpal tunnel syndrome, with a date of injury on or about January 22, 1993; (2) left sided carpal tunnel syndrome with a date of injury in or about March 1994; and (3) a third claim, which could be a cumulative trauma injury with a last date of exposure on January 2, 1997.

4.      A dispute has arisen between GRC and Redondo Beach regarding GRC's obligations under the Policy with respect to certain losses incurred by Redondo Beach arising from the Johns Workers' Compensation Claims.

5.      As used in this Agreement, "Redondo Beach Claims" means any claims or causes of action that either Redondo Beach or GRC may have against the other on the Effective Date or during the period of this Agreement relating to any of the Johns Worker Compensation Claims.

6.      "Redondo Beach Claims" include, but are not limited to, claims for breach of contract, bad faith, fraud, negligent misrepresentation, reimbursement or declaratory relief by either Redondo Beach against GRC or GRC against Redondo Beach relating to Trudy Johns.

7.      This Agreement may not be used as evidence that any such Redondo Beach Claims exist or have merit.

**EXHIBIT 2**

8.      GRC and Redondo Beach wish to toll the running of all applicable statutes of limitations from the Effective Date of this Agreement for a period of one year or until this Agreement terminates, whichever occurs first, for the Redondo Beach Claims.

### Agreement

9.      The statute of limitations for all Redondo Beach Claims will be tolled while this Agreement is in effect, for up to one year from the Effective Date.

10.      This Agreement may be terminated by 30 days' written notice by either Party.  Such written notice must be made by email and mail to the attorneys for the opposing party: (1) Richard Stoll for Redondo Beach (rms @ shslawoffices.com) and (2) Nancy J.W. Brown for GRC (nbrown @ btlawla.com). The notice will be effective upon its transmission by email, and the Agreement will terminate 30 days after the notice. Redondo Beach and GRC can change by future written notice the persons to whom notice of termination should be sent under this paragraph, without amendment of this Agreement.

11.      This Agreement will terminate automatically, without further notice, on November 30, 2019.

12.      The Parties further agree that neither this Agreement nor any Party's reliance on it should be used to support any equitable time-limitation defense such as laches or estoppel.

13.      Except as provided by this Agreement, this Agreement is not a waiver of any rights of the Parties. Specifically, the Parties each reserve all rights they may have under the Policy and applicable law.

14.      This Agreement is made and shall be construed and enforced in accordance with the laws of the State of California.

15.      This Agreement may be executed in counterparts, the signatures may be transmitted via fax or email, and the executed counterparts shall be construed as, and constitute, one document. This Agreement will not become effective unless it is signed by both Parties.

16.    This Agreement contains the entire agreement of the Parties with respect to its subject matter.  This Agreement may be modified or amended only by written agreement executed by all the Parties hereto.


Dated: December 17, 2018

By: _____

Name: Jill Buchholz

Title: Risk Manager

On behalf of the City of Redondo Beach


Dated: December 28, 2018

By: _____

Bradley Wiggett, Vice President

Genesis Management and Insurance Services Corporation, on behalf of General Reinsurance Corporation

## AMENDMENT OF TOLLING AGREEMENT

The City of Redondo Beach ("Redondo Beach") and General Reinsurance Corporation ("GRC") hereby amend their Tolling Agreement, effective November 30, 2018 as follows:

1.  Redondo Beach and GRC agree to extend the tolling period for one further year, from November 30, 2019 to November 30, 2020.

2.  Paragraph 9 of the Tolling Agreement is changed to the following: "The statute of limitations for all Redondo Beach Claims will be tolled while this Agreement is in effect, for up to one year from the Effective Date."

3.  Paragraph 11 of the Tolling Agreement is changed to the following: "This Agreement will terminate automatically, without further notice, on November 30, 2020."

4.  All other terms and provisions of the Tolling Agreement remain the same.

Dated: November 19 , 2019        By:  _____

Name: Jill Buchholz
Title: Risk Manager
On behalf of the City of Redondo Beach

Dated: November 26 , 2019        By:  _____

Carrie L. Salvatore, AIC
Vice President | Unit Manager
Genesis Management and Insurance
Services Corporation, a fully authorized
representative of General Reinsurance
Corporation

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Torrance Courthouse<br>825 Maple Avenue, Torrance, CA 90503 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>11/18/2020<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ E. Johnston _____ Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br>**UNLIMITED CIVIL CASE** | |
| Your case is assigned for all purposes to the judicial officer indicated below. | CASE NUMBER:<br>20TRCV00852 |

## THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✔ | Deirdre Hill | M | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 11/18/2020
(Date)

Sherri R. Carter, Executive Officer / Clerk of Court

By E. Johnston _____, Deputy Clerk

LACIV 190 (Rev 6/18)
LASC Approved 05/06

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**



## Superior Court of California, County of Los Angeles

| |
|---|
| **ALTERNATIVE DISPUTE RESOLUTION (ADR)**<br>**INFORMATION PACKAGE**<br><br>**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**<br><br>**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action<br>with the cross-complaint. |

### What is ADR?

ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration and settlement conferences. When ADR is done by phone or computer, it may be called Online Dispute Resolution (ODR). These "alternatives" to litigation and trial are described below.

### Advantages of ADR

- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees and witness fees.
- **Keeps Control** with the parties: Parties choose their ADR process and provider for voluntary ADR.
- **Reduces stress/protects privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR

- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR and litigation and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

### Main Types of ADR:

1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral "mediator" listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all.  Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   Mediation may be appropriate when the parties
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   Mediation may not be appropriate when the parties
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

LASC1

---

**How to arrange mediation in Los Angeles County**

Mediation for civil cases is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**

    Parties may contact these organizations to request a "Resource List Mediation" for reduced-cost or free (for selected cases) mediation in person or with ODR (by phone or online).

- JAMS, Inc.: Case Manager **(213) 253-9776  mdawson@jamsadr.com**
- Mediation Center of Los Angeles: Case Manager: **(833) 476-9145  info@mediationLA.org**

These organizations cannot accept every case and they may decline cases at their discretion.

    Visit www.lacourt.org/ADR.Res.List for important information and FAQs before contacting them.

    NOTE: This service is not available for family law, probate or small claims.

b. **Los Angeles County Dispute Resolution Programs**
https://wdacs.lacounty.gov/programs/drp/

- Free, day- of- trial mediations at the courthouse for small claims, unlawful detainers (evictions) and, at the Stanley Mosk Courthouse, limited civil. No appointment needed.
- Free or low-cost mediations before the day of trial for these and other case types.
- For ODR by phone or computer for small claims or unlawful detainer (eviction) cases before the day of trial, visit
http://www.lacourt.org/division/smallclaims/pdf/OnlineDisputeResolutionFlyer-EngSpan.pdf

c. **Mediators and ADR and Bar organizations** that provide mediation may be found on the internet.

---

3. **Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit  http://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC):** MSCs are ordered by the Court and are often held close to the trial date. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit: www.lacourt.org/division/civil/settlement

**Los Angeles Superior Court ADR website:** www.lacourt.org/division/civil/settlement
**For general information and videos about ADR, visit** http://www.courts.ca.gov/programs-adr.htm

 

**dcba.lacounty.gov**

# Resolve your lawsuit online before your trial date

 

**Use Online Dispute Resolution from the County of Los Angeles Department of Consumer and Business Affairs. Our mediation services are available at no cost and can help you resolve your case from the comfort of your own home.**

## How We Can Help:

**Efficient and effective:** With Online Dispute Resolution, you are in control, not the courts. You decide whether a settlement is right for you. You save time and money, and avoid the inconvenience of going to Small Claims Court.

**Flexible:** You can select the schedule and type of Online Dispute Resolution that works best for you. You can live chat with a mediator, submit an offer to settle, or participate in a video mediation.

**Experienced:** Our trained mediators are neutral third parties who can help you reach a reasonable settlement.

## How to get started with Online Dispute Resolution:

### Visit our website

dcba.lacounty.gov

### Email us at

mediation@dcba.lacounty.gov

### Or call

(213) 974-0826

 

**dcba.lacounty.gov**

# Resuelva su demanda por Internet antes de la fecha de su juicio

 

**Use el servicio virtual de resolución de disputas (Online Dispute Resolution) del Departamento de Servicios Para Consumidores y Negocios del Condado de Los Ángeles. Nuestros servicios son gratuitos y pueden ayudarle a resolver su caso desde la comodidad de su hogar.**

### Podemos ayudarle. Nuestro servicio es:

**Eficiente y Eficaz:** Con el servicio de resolución de disputas, usted está en control, no la corte. Usted decide si está satisfecho con el acuerdo logrado. Este método le puede ahorrar tiempo, dinero y evitarle la inconveniencia de ir a corte.

**Flexible:** Puede utilizar nuestro sistema virtual para seleccionar la fecha y el método más conveniente para usted. También podrá elegir la opción de comunicarse con su mediador por "chat", proponer su propio acuerdo, o participar en sesiones de mediación por videoconferencia.

**Profesional:** Nuestros mediadores están capacitados, son imparciales, y podrán ayudarle en llegar a un acuerdo razonable.

### Como iniciar una resolución con nuestro servicio:

#### Visite Nuestra Sitio Web

dcba.lacounty.gov

#### Envié un Correo Electrónico

mediation@dcba.lacounty.gov

#### O Llame

(213) 974-0826

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**

**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions In Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

### SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER |
|---|---|

This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.

The parties agree that:

1.  The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

    a.  Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

    b.  Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

    c.  Exchange of names and contact information of witnesses;

    d.  Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

    e.  Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

    f.  Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

    g.  Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lasuperiorcourt.org* under "*Civil*" and then under "*General Information*").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
   (INSERT DATE)                                              (INSERT DATE)
   complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation.

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date: _____

_____         ➤  _____
      (TYPE OR PRINT NAME)                            (ATTORNEY FOR PLAINTIFF)

Date: _____

_____         ➤  _____
      (TYPE OR PRINT NAME)                            (ATTORNEY FOR DEFENDANT)

Date: _____

_____         ➤  _____
      (TYPE OR PRINT NAME)                            (ATTORNEY FOR DEFENDANT)

Date: _____

_____         ➤  _____
      (TYPE OR PRINT NAME)                            (ATTORNEY FOR DEFENDANT)

Date: _____

_____         ➤  _____
      (TYPE OR PRINT NAME)                            (ATTORNEY FOR _____ )

Date: _____

_____         ➤  _____
      (TYPE OR PRINT NAME)                            (ATTORNEY FOR _____ )

Date: _____

_____         ➤  _____
      (TYPE OR PRINT NAME)                            (ATTORNEY FOR _____ )

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

FAX NO. (Optional):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.

The parties agree that:

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i.   File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii.  Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i.   Also be filed on the approved form (copy attached);

      ii.  Include a brief summary of why the requested relief should be denied;

**STIPULATION – DISCOVERY RESOLUTION**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

  iii. Be filed within two (2) court days of receipt of the Request; and

  iv. Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

 c. No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

 d. If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

 e. If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4. If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5. The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

 It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6. Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7. Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date:

_____          ➢  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR PLAINTIFF)

Date:

_____          ➢  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____          ➢  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____          ➢  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____          ➢  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

Date:

_____          ➢  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

Date:

_____          ➢  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):                    FAX NO. (Optional):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

> _____
(ATTORNEY FOR PLAINTIFF)

> _____
(ATTORNEY FOR DEFENDANT)

> _____
(ATTORNEY FOR DEFENDANT)

> _____
(ATTORNEY FOR DEFENDANT)

> _____
(ATTORNEY FOR _____)

> _____
(ATTORNEY FOR _____)

> _____
(ATTORNEY FOR _____)

## THE COURT SO ORDERS.

Date: _____

_____
JUDICIAL OFFICER

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER |
|---|---|

1. This document relates to:
   ☐  Request for Informal Discovery Conference
   ☐  Answer to Request for Informal Discovery Conference
2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).
3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).
4. For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue.  For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.

LACIV 094 (new)
LASC Approved 04/11

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)